Approved: _____
JARED LENOW
Assistant United States Attorney

Before:  HONORABLE JAMES C. FRANCIS IV
         United States Magistrate Judge
         Southern District of New York

14 MAG 2872

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :   COMPLAINT

        - v. -                    :   Violation of
                                      21 U.S.C. § 846
BENJAMIN MARINO,                  :
                                      COUNTY OF OFFENSE:
           Defendant.             :   NEW YORK

- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

    JESSE PRESCOTT, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration ("DEA"), and charges as follows:

### COUNT ONE

    1.   From at least in or about August 2014 through on or about December 22, 2014, in the Southern District of New York and elsewhere, BENJAMIN MARINO, the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

    2.   It was a part and an object of the conspiracy that BENJAMIN MARINO, the defendant, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1).

    3.   The controlled substance that BENJAMIN MARINO, the defendant, conspired to distribute and possess with intent to distribute was 50 grams and more of methamphetamine, its salts, isomers, and salts of its isomers, in violation of 21 U.S.C. § 841(b)(1)(A).

              (Title 21, United States Code, Section 846.)

1

The bases for my knowledge of the foregoing charge is, in part, as follows:

4. I am a Special Agent with the DEA. During my tenure with the DEA, I have participated in numerous investigations of unlawful drug traffickers and, among other things, have conducted or participated in surveillances, the execution of search warrants, debriefings of informants and confidential sources and cooperating witnesses, reviews of taped conversations and drug records, and the interception of wire and electronic communications.

5. I have been personally involved in the investigation of this matter. This affidavit is based on my personal observations and participation during the investigation, my conversations with other law enforcement officers and agents, my interviews of witnesses, my execution of search warrants and seizure of evidence, and my examination of evidence, documents, reports and other records. Because this affidavit is submitted for the limited purpose of establishing probable cause, it does not include all facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### The Investigation

6. On or about November 5, 2014, another law enforcement agent and I arrested a co-conspirator not charged herein ("CC-1") at a location in Queens, New York. Immediately prior to his arrest, I observed CC-1 to be in possession of a black, medium-sized backpack (the "Backpack"). A subsequent search of the Backpack uncovered the following items, among others:

a. Multiple plastic baggies containing clear, hard, rock-like substances which field tested positive for the presence of crystal methamphetamine. The baggies containing that substance were weighed, and the aggregate weight of the baggies and substances contained therein was approximately 79 grams. Those baggies and substances were submitted to a DEA lab for analysis. The DEA lab determined that the plastic baggies contained approximately 36.4 grams of substances, which in turn contained 36.1 grams of pure methamphetamine.

b. A digital scale.

Case 1:14-mj-02872-UA   Document 1   Filed 12/23/14   Page 3 of 6

        c.    Small plastic baggies.

7. Based on my training and experience, I believe individuals involved in drug trafficking use items such as digital scales and small plastic baggies to engage in drug trafficking.

8. On or about November 10, 2014, other law enforcement agents and I arrested another co-conspirator not charged herein ("CC-2") at a location in Manhattan. At the time of CC-2's arrest, CC-2 was carrying three medium-sized bags (the "CC-2 Bags").

9. CC-2 agreed to let me and other law enforcement agents search the CC-2 Bags. Other law enforcement agents and I seized from those bags, among other items, plastic baggies containing a clear, hard, rock-like substance which field tested positive for the presence of crystal methamphetamine. The baggies containing that substance were weighed, and the aggregate weight of the baggies and substances contained therein was approximately 374.7 grams.

10. After CC-2 was arrested, law enforcement found a cell phone on CC-2's person (the "CC-2 Phone"), and subsequently obtained a search warrant from a judge in this District for the CC-2 Phone. From reviewing the contents of the CC-2 Phone, I learned the following, in substance and in part:

        a.    The contact list in the CC-2 Phone includes a number (the "Marino Phone Number") for an individual whose name is listed as "Ben".

        b.    Between on or about November 6, 2014, and on or about November 9, 2014, CC-2 and "Ben" exchanged text messages in which they discussed, in substance and in part, their inability to get in contact with CC-1, and how they would continue with "the business" in which they were involved with CC-1.

11. I have reviewed a recording of a December 2, 2014 telephone call that CC-1 placed to the Marino Phone Number while CC-1 was incarcerated at a federal detention facility. From reviewing that telephone call, I learned the following, in substance and in part:

      a.   A male individual later identified as BENJAMIN MARINO, the defendant, answered the telephone call placed by CC-1.

      b.   MARINO stated that his address was a location in Manhattan (the "Marino Address").

      c.   CC-1 and MARINO engaged in the following discussion, in substance and in part:

> MARINO: My guy…that is very, you know, he's working a lot and he's around…He saw him actually.
>
> CC-1: When?
>
> MARINO: Maybe 2 days ago.
>
> CC-1: 2 days ago?
>
> MARINO: 2 or 3 days ago.
>
> CC-1: Yeah.
>
> MARINO: And apparently, he's still putting that story out there.
>
> CC-1: What story?
>
> MARINO: About like what happened to him. How he got in…You know. With everything that there was. That it all ended and 48 hours later, being back out. With whatever, bail, whatever. It's not possible.
>
> CC-1: This story just doesn't make sense. From the time that it occurred…
>
> MARINO: No, no…absolutely, absolutely not possible. And I'm saying 2 days, but I'm think it was even less.
>
> . . .
>
> CC-1: So what are we gonna do about this kid?
>
> MARINO: I don't know? You see, that's the thing. What I want to do is…I want to do nothing. Because I think it's like squeezing blood from a stone. And by piecing….

> CC-1: Can you just let him know what the situation is with me. And that I'm gonna go after him when I get out.
>
> . . .
>
> CC-1: He totally betrayed me.
>
> MARINO: Well yeah…I mean it could have been just left in my hands, and I think it was very clear to everybody, that would have been the responsible thing.
>
> CC-1: Yeah.
>
> MARINO: The decision being left in my hands on how to handle things, I think it would have made it better. It would have. But, in the meantime, I'm gonna work with what I've got. And do what I can. So that's why I feel like if I could see you, I could maybe give you a better understanding of what's up.

Based on my training and experience, the facts set forth above, and my investigation in this matter, I believe this discussion concerns CC-1 and MARINO's belief that CC-2 had not actually been arrested, but rather had stolen crystal methamphetamine from CC-1 and MARINO, and that MARINO would continue to engage in the distribution of crystal methamphetamine while CC-1 was incarcerated.

   12.   A public records search revealed that the current resident of the Marino Address is "Benjamin Marino."

   13.   On or about December 22, 2014, I and other law enforcement agents arrested BENJAMIN MARINO, the defendant, at a location in Manhattan. At the time of his arrest, MARINO was in possession of two cellular phones (the "Marino Phones"). When I placed a call to the Marino Phone Number, one of the Marino Phones immediately began ringing. Also at the time of his arrest, MARINO was carrying approximately six bags, including a medium-sized suitcase, a backpack, a canvas-style bag, a paper shopping bag, and two plastic shopping bags (the "Marino Bags").

   14.   BENJAMIN MARINO, the defendant, agreed to let me and other law enforcement agents search the Marino Bags. I conducted a search of the Marino Bags, and seized, among other items, multiple plastic baggies containing a clear, hard, rock-like substance which field tested positive for the presence of crystal methamphetamine.

15. Subsequent to his arrest, law enforcement agents, including myself, sought to question BENJAMIN MARINO, the defendant. After being advised of and waiving his *Miranda* rights orally and in writing, MARINO informed me and other law enforcement agents, in substance and in part, of the following:

   a. MARINO had purchased crystal methamphetamine from CC-1 once or twice each week over the past three to four months, and MARINO resold most of that crystal methamphetamine to others.

   b. MARINO had received a package containing approximately four to five ounces of crystal methamphetamine from CC-2 at a location in Manhattan.

   c. The Marino Phone Number is one of MARINO's cell phone numbers.

   d. MARINO had approximately two to three ounces of crystal methamphetamine in the Marino Bags.

WHEREFORE, deponent asks that BENJAMIN MARINO, the defendant, be imprisoned, or bailed, as the case may be.

_____
JESSE PRESCOTT
Special Agent
Drug Enforcement Administration

Sworn to before me this
23rd day of December, 2014.

_____
THE HONORABLE JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK